**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

v.

**Paul MILLS, Appellee.**

**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

v.

**Lynn SMITH, Appellee.**

**Nos. 90–3531, 90–3596.**

United States Court of Appeals, Third Circuit.

Argued April 25, 1991.

Decided June 3, 1991.

Terry M. Halpern, U.S. Atty., Audrey Thomas–Francis, Azekah Jennings, Asst. U.S. Attys., District of the Virgin Islands, Joseph Douglas Wilson (Argued), Dept. of Justice, Washington, D.C., for appellant.

Thurston T. McKelvin, (Argued), Acting Federal Public Defender, St. Thomas, Virgin Islands, for appellee, Paul Mills.

John L. Maduro (Argued), St. Thomas, Virgin Islands, for appellee, Lynn Smith.

Before BECKER, SCIRICA and ALITO, Circuit Judges.

OPINION OF THE COURT

ALITO, Circuit Judge:

The Government of the Virgin Islands seeks review of two orders granting new trials under Fed.R.Crim.P. 25(b),[1] which specifies the applicable procedures when the trial judge in a criminal case is unable to complete the remaining duties following a verdict or finding of guilt. Rule 25(b) permits another judge to perform those duties but also authorizes this judge to grant a new trial if he is satisfied that he cannot perform the remaining duties required or that a new trial is "appropriate" for some other reason. We will reverse the orders granting new trials in the cases before us.

## I.

A. Paul Mills was charged in the District Court of the Virgin Islands with third degree burglary (14 V.I.C. § 444), which is punishable by imprisonment for not more than five years, and grand larceny (14 V.I.C. § 1083(1)), which is punishable by imprisonment for not more than ten years. Because the District Court of the Virgin Islands has had no permanent judges for some time, judges from other courts have been sitting by designation in the Virgin Islands on a rotating basis. The presiding judge at Mills' jury trial was Judge Leland C. Nielsen of the United States District Court for the Southern District of California. The evidence at Mills' trial showed that he broke into a hotel room in St. Thomas and that the occupants, two tourists from England, returned and surprised him while he was ransacking the room. One of the tourists testified at trial and identified Mills, who was convicted on both charges.

After the verdict, Mills moved for a new trial under Fed.R.Crim.P. 33. Judge Nielsen denied this motion before returning to his home district. The United States Attorney subsequently filed a habitual offender information against Mills pursuant to 14 V.I.C. § 61(a). The information alleged that Mills had been convicted in the same court in 1989 for third degree robbery, which is classified as a crime of violence for purposes of the habitual offender statute. 14 V.I.C. § 61; 23 V.I.C. § 451. Under the habitual offender statute, a defendant who is convicted of a felony in the Virgin Islands and who has a prior felony conviction must be incarcerated for at least ten years and may be incarcerated for life. If the prior felony was a crime of violence, service of the mandatory minimum may not be avoided by suspension of the sentence, probation, or parole. 14 V.I.C. § 61(a).

After Judge Nielsen's departure, Mills' case was reassigned to Judge Clifford Scott Green of the United States District Court for the Eastern District of Pennsylvania. At a court proceeding following the reassignment, Judge Green asked the prosecutor whether the government intended to persist with the habitual offender information. When the prosecutor responded in the affirmative, Judge Green stated that he would grant a new trial under Rule 25(b) unless the government withdrew the habitual offender information. Judge Green explained that it was his "personal view" that he should not sentence on matters that he "did not hear" and about which he had "some reservations." He elaborated that he did not know whether Judge Nielsen's ruling on the Rule 33 motion would have been affected had Judge Nielsen known that a habitual offender information would be filed. Judge Green stated, however, that Judge Nielsen had left no notes regarding the Mills case, and Judge Green added that he had "no idea what Judge [Nielsen's] intentions [were]." Judge Green then continued the matter, promising to inquire whether Judge Nielsen

---

1. Rule 25(b) provides:
   (b) After Verdict or Finding of Guilt. If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if that judge is satisfied that a judge who did not preside at the trial cannot perform those duties or that it is appropriate for any other reason, that judge may grant a new trial.

would return to the Virgin Islands to conclude the case.

At the next proceeding one week later, Judge Green reported that Judge Nielsen was unavailable. Judge Green again asked whether the prosecution was willing to withdraw the habitual offender information. When the prosecutor declined, the court granted a new trial under Rule 25(b).

B. Lynn Smith was charged in the District Court of the Virgin Islands with offenses related to a shooting, and his case, like Mills', was assigned to Judge Nielsen. After a jury trial, Smith was found guilty of attempted murder in the second degree, which is punishable by imprisonment for not more than 25 years (14 V.I.C. §§ 922, 331, 332), first degree assault, which is punishable by imprisonment for not more than 15 years (14 V.I.C. § 295(1), (3)), and possession of a dangerous weapon during a crime of violence, which is punishable by imprisonment for 5 to 10 years (14 V.I.C. § 2253(a)).

After the verdict, the government filed a habitual offender information, alleging that Smith had been convicted in the Virgin Islands in 1983 for two felonies: unlawful carrying of firearms (14 V.I.C. § 2253(a)) and selling firearms without a license (23 V.I.C. § 467). As in Mills' case, Judge Nielsen departed from the Virgin Islands before sentencing, and the case was reassigned to Judge Green. At a hearing after the reassignment, Judge Green revealed that Judge Nielsen had left him a note stating that he would not have sentenced Smith to more than five years' imprisonment. Judge Green stated that he felt it would be inappropriate for him to impose a greater sentence since he had not heard the case. He continued the hearing to determine whether Judge Nielsen would return to the Virgin Islands to sentence Smith. After ascertaining that Judge Nielsen would not return, Judge Green continued the matter again, and the case was reassigned to the next visiting judge, Judge Barbara K. Hackett of the United States District Court for the Eastern District of Michigan. Judge Hackett suggested that Judge Nielsen conduct the sentencing by telephone, a procedure to which both parties consented, but for reasons that do not appear in the record this procedure was not employed.

Smith's case was then reassigned to the next visiting judge, Judge Joseph Farnan, Jr., of the United States District Court for the District of Delaware. At Smith's request, Judge Farnan entered an order granting a new trial under Rule 25(b). The order recited, among other things, that "both the Honorable Clifford Scott Green and the Honorable Barbara K. Hackett declined to sentence Defendant in the absence of Judge Nielsen" and that "the court conclude[d] that Defendant should not be sentenced by a judge who did not preside at his trial, especially in view of the Government's application that Defendant be sentenced as an habitual offender." At the court proceeding, Judge Farnan recognized that a retrial would be burdensome. He also stated: "[B]elieve me, I would not in the least ... be offended ... if some panel thought that I abused my discretion."

II.

■ Before turning to the merits of these appeals, we must first consider whether we have jurisdiction. The government contends that these appeals are authorized under 18 U.S.C. § 3731 and that, in any event, we may review the new trial orders pursuant to a petition for writ of mandamus. Because we hold that we have jurisdiction under Section 3731, we need not address the issue of mandamus.

A. Under 18 U.S.C. § 3731, "the United States" is authorized to appeal certain orders in criminal cases. In *Government of the Virgin Islands v. Christensen*, 673 F.2d 713, 716 (3d Cir.1982), we held that this provision applies to appeals taken by the Government of the Virgin Islands. We reasoned (*id.*) that the territorial government acts as "a prosecutorial arm of the federal government" when it enforces the criminal laws.

When *Christensen* was decided, Section 3731 did not authorize appeals from orders

granting new trials.[2] In 1984, however, the statute was expanded to permit such appeals. The House Report (H.R.Rep. No. 98–1030, 98th Cong., 2d Sess. 404 [1984 U.S.Code Cong. & Admin. News 3182 *et seq.*]) stated that the amendment "would provide a far fairer and more efficient mechanism to correct an erroneous decision than a costly, time consuming new trial." *Id.* at 3541. The report observed (*id.* at 3542) that the government's inability to appeal "erroneously granted new trial orders is wasteful of resources and harmful to the government." The report elaborated (*id*):

> Since the government has no opportunity to obtain correction of a wrongly entered post-conviction new trial order, all such cases must be retried at considerable public expense and further burdening our overcrowded courts. Moreover, the likelihood of the government's prevailing again at a second trial is necessarily diminished for reasons unrelated to the guilt or innocence of the defendant, for the strategy of the prosecution

will have already been revealed and with the passage of time government witnesses may have become unavailable or their memories dimmed.

The version of Section 3731 in effect since 1984, when viewed by itself, clearly appears to provide jurisdiction for the present appeals.

■ B. The defendants maintain, however, that appellate jurisdiction is lacking by virtue of 48 U.S.C. § 1493.[3] This provision, which was enacted in 1984 at virtually the same time as the amendment of 18 U.S.C. § 3731,[4] authorizes territorial prosecutors to appeal certain orders in criminal cases but omits mention of orders granting new trials. Instead, 48 U.S.C. § 1493 is limited to those orders that were appealable under 18 U.S.C. § 3731 prior to the 1984 amendment.

Passage of 48 U.S.C. § 1493 followed the Ninth Circuit's decision in *People of the Territory of Guam v. Okada*, 694 F.2d 565 (9th Cir.1982), *amended* 715 F.2d 1347

---

2. At that time, Section 3731 read as follows:
§ 3731. Appeal by United States

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court's suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title.

The provisions of this section shall be liberally construed to effectuate its purposes.

3. 48 U.S.C. § 1493 provides:

§ 1493. Prosecution; authorization to seek review; local or Federal appellate courts; decisions, judgments or orders

The prosecution in a territory or Commonwealth is authorized—unless precluded by local law—to seek review or other suitable relief in the appropriate local or Federal appellate court, or, where applicable, in the Supreme Court of the United States from—

(a) decision, judgment, or order of a trial court dismissing an indictment or information as to any one or more counts, except that no review shall lie where the constitutional prohibition against double jeopardy would further prosecution;

(b) a decision or order of a trial court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the prosecution certifies to the trial court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding; and

(c) an adverse decision, judgment, or order of an appellate court.

4. Section 1493 was enacted on October 5, 1984, and took effect 90 days later. Pub.L. 98–454, § 1005, 98 Stat. 1746. The amended section 3731 was enacted on October 12, 1984. Pub.L. 98–473, title II, § 1206, 98 Stat. 2153.

(1983), *cert. denied,* 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984), which conflicted with our decision in *Christensen.* In *Okada,* the Ninth Circuit held that it lacked jurisdiction to entertain an appeal by the Territory of Guam from an order dismissing a criminal indictment. Disagreeing with *Christensen,* the Ninth Circuit held that 18 U.S.C. § 3731 "does not authorize appeals by territorial governments." 694 F.2d at 567 n. 3; *see also* 715 F.2d at 1347–48.

Congress sought to overrule *Okada* by an amendment to a bill to enhance economic development in the territories. H.R. 5561, 98th Cong., 2d Sess. (1984); *see* H.Rep. No. 98–784, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 2908 *et seq.* On the Senate floor, five new titles were added to this bill. 130 Cong. Rec. S23782 *et seq.* (daily ed. Aug. 10, 1984). One of these new titles, Title X, included the provision (section 1003) that became 48 U.S.C. § 1493. Another new title, Title VII, contained numerous important amendments to the Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1361 et seq. (as amended). One of these provisions (section 706) amended 48 U.S.C. § 1614(b) to provide in pertinent part as follows: "Where appropriate the provisions of part II of Title 18 ... shall apply to the district court and appeals therefrom." Part II of Title 18 includes 18 U.S.C. § 3731.

In the present case, the defendants contend that 48 U.S.C. § 1493 now constitutes the exclusive provision under which the Government of the Virgin Islands may appeal in criminal cases, since that provision, unlike 18 U.S.C. § 3731, specifically applies to territorial cases. We disagree.

█ C. As interpreted in *Christensen,* the term "the United States" in 18 U.S.C. § 3731 includes the Government of the Virgin Islands. That interpretation binds this panel unless the scope of 18 U.S.C. § 3731 was somehow narrowed by 48 U.S.C. § 1493. In other words, 18 U.S.C. § 3731 continues to provide jurisdiction for appeals by the Government of the Virgin Islands unless that provision was impliedly repealed in part by 48 U.S.C. § 1493. We find insufficient grounds for concluding that such an implied repeal took place.

" 'It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored' ... and whenever possible, statutes should be read consistently." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982), *quoting Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *Porter v. United States Department of Justice,* 717 F.2d 787, 797 (3d Cir.1983). A repeal by implication may be found if (1) provisions in two acts are in irreconcilable conflict or (2) it is clear that an earlier act was intended to be replaced by a subsequent act completely covering the same subject. *Kremer v. Chemical Construction Corp.,* 456 U.S. at 468, 102 S.Ct. at 1890–91; *Porter v. United States Department of Justice,* 717 F.2d 787, 797 (3d Cir.1983). In any event, "the intention of the legislature to repeal must be clear and manifest." *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936); *see also Kremer v. Chemical Construction Corp.,* 456 U.S. at 468, 102 S.Ct. at 1890–91; *Radzanower v. Touche Ross & Co.,* 426 U.S. at 154, 96 S.Ct. at 1993.

We find no "clear" or "manifest" indication that 48 U.S.C. § 1493 was intended to repeal 18 U.S.C. § 3731 insofar as the latter provision authorized appeals by the Government of the Virgin Islands. There is no conflict between the provisions of the two statutes. Nor is it apparent that 48 U.S.C. § 1493 was meant to serve as a complete substitute for 18 U.S.C. § 3731 with respect to appeals by territorial prosecutors. On the contrary, the act containing 48 U.S.C. § 1493 also contained another provision, 48 U.S.C. § 1614(b), that appears to incorporate 18 U.S.C. § 3731 by reference. As previously noted, 48 U.S.C. § 1614(b), which was enacted together with 48 U.S.C. § 1493, provides that part II of Title 18 of the United States Code (which includes 18 U.S.C. § 3731) applies to Virgin Islands appeals "[w]here appropriate." In

light of this provision, we cannot conclude that Congress clearly and manifestly intended for 48 U.S.C. § 1493 to serve as a partial repeal of 18 U.S.C. § 3731.

Moreover, Congress's views during the period in question regarding territorial appeals and appeals from new trial orders suggest that Congress did not intend to bring about a partial repeal of 18 U.S.C. § 3731. Based upon the virtually contemporaneous enactment of 48 U.S.C. § 1493 and the amendment of 18 U.S.C. § 3731, we can infer, first, that Congress wanted to expand the appellate authority of territorial prosecutors and second, that Congress generally wanted to permit prosecutors to appeal orders granting new trials. It therefore seems obvious that Congress, in enacting 48 U.S.C. § 1493, did not specifically intend to preclude the Government of the Virgin Islands from appealing new trial orders.

At best, the defendants can argue that Congress intended to repeal 18 U.S.C. § 3731 in part, but that Congress acted without understanding the effects of such a repeal. Absent much clearer evidence than is present here, however, we will not infer that Congress partially repealed 18 U.S.C. § 3731 without making an accurate survey of the consequences. It is far more likely that Congress, in enacting 48 U.S.C. § 1493, simply intended to expand the appellate authority of territorial prosecutors and had no intention of supplanting related statutes. Thus, we hold that 18 U.S.C. § 3731 still authorizes appeals by the Government of the Virgin Islands (including from orders granting new trials) and that we therefore have jurisdiction to entertain the appeals before us. We will accordingly turn to the question whether the district judges abused their discretion in granting new trials under Fed.R.Crim.P. 25(b).

## III.

■ The root cause of the present appeals is the lack of any permanent district judges in the District of the Virgin Islands. The district judges involved in these cases responded to a pressing need by sitting in that district by designation. This unusual assignment presented unusual problems. The judges were requested to impose lengthy sentences in criminal cases that had been tried before another judge and with which they were therefore unfamiliar. Sentencing is one of the weightiest and most difficult responsibilities of a trial judge. Conscientious trial judges strive to ensure that they exercise their discretionary sentencing authority properly and sensitively in light of the facts of each particular case. Consequently, the reluctance of the judges in these cases to impose sentence is easily understandable. Nevertheless, we conclude that the granting of new trials in these cases did not represent an appropriate exercise of discretion. We perceive three possible grounds for the orders at issue, and we will address each of these grounds in turn.

■ First, the judges expressed reluctance to impose the lengthy minimum sentence called for by the habitual offender statute. This minimum sentence, however, is mandatory. 14 V.I.C. §§ 61(d)(1); *Government of the Virgin Islands v. David*, 741 F.2d 653 (3d Cir.1984). A judge cannot grant a new trial under Rule 25(b) simply because the judge disagrees with the penalty required by law. Nor can a judge's refusal to impose a mandatory minimum sentence be justified on the ground that the judge did not preside at trial and therefore lacks a full and detailed knowledge of the case. Such familiarity is not needed in order to carry out the mandatory responsibility of imposing the minimum sentence prescribed by the statute.

Second, the judges were apparently reluctant to sentence because, not having presided at trial, they lacked familiarity with the relevant facts. Sentencing under the habitual offender statute would have required the judges to make the discretionary determination whether to impose a sentence greater than the mandatory minimum, and discretionary sentencing decisions are undoubtedly more difficult when the sentencing judge did not preside at trial. Nevertheless, we do not believe that

this factor justified the new trial orders before us in these appeals.

■ As recognized in the House Report on the 1984 amendment to 18 U.S.C. § 3731, granting a new trial after a guilty verdict often causes substantial public expense and increases the burdens on overcrowded courts. More important, the retrial may produce an unjust result due to the passage of time. For these reasons, the authority to grant a new trial under Rule 25(b) should be exercised sparingly. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987); *United States v. Goodwin*, 770 F.2d 631, 639 (7th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986).

A judge who did not preside at trial has several less drastic means of acquiring the knowledge needed to make discretionary sentencing decisions. The judge will, of course, receive a presentence report. The judge may read and study the trial transcript. The judge may request the parties to submit sentencing memoranda. And if the judge believes that live testimony is needed in order to make credibility determinations or for some other reason, the judge may conduct a sentencing hearing. Unless these less drastic alternatives are explored and determined to be unsatisfactory, it seems difficult to justify the granting of a new trial solely to gather facts needed for sentencing.

In the present case, the record does not show that these less drastic alternatives were considered or found to be inadequate. Furthermore, the judges who granted new trials were apparently willing to make discretionary sentencing decisions in both cases provided that the habitual offender informations were withdrawn. Without the habitual offender information, the judge in Mills' case would have been required, according to the pre-sentence report, to select a sentence from a range between probation and 15 years' imprisonment; the judge in Smith's case would have been required, according to the pre-sentence report, to select a sentence between 7½ years and 35 years. If the judges could acquire the information needed to make

these discretionary sentencing decisions, there is no apparent reason why they could not have made the discretionary sentencing decisions that would have been necessary under the habitual offender statute. Moreover, the prosecution conceded at oral argument before us that it would not ask for sentences greater than the mandatory minimum in these cases.

■ Finally, Judge Green, in granting a new trial under Rule 25(b) in Mills' case, stated that he did not know whether Judge Nielsen would have denied Mills' motion for a new trial under Fed.R.Crim.P. 33 if Judge Nielsen had known that the prosecution was going to file a habitual offender information. The new trial order cannot be sustained on this basis. A decision to grant or deny a new trial under Fed.R. Crim.P. 33 should not be affected by the filing of a habitual offender information, and the record contains no indication that Judge Nielsen's disposition of Mills' Rule 33 motion would have been influenced by the knowledge that a habitual offender information would be filed. Indeed, there is no hint in the record whether Judge Nielsen felt that the mandatory minimum sentence called for in Mills' case was too high. Nor is there any indication what sentence Judge Nielsen would have imposed if he had performed that task and if the habitual offender information had not been filed.

## IV.

We will reverse the orders granting new trials under Fed.R.Crim.P. 25(b) and remand for further proceedings.